[S. C., 2 Tenn. 202.]
This was an ejectment in the Circuit Court of Roane, and appeal to this court.
It appeared on the trial that the plaintiff claimed under a grant to William Reed for 400 acres of land; from this grant, which was offered in evidence, it appeared that the land was surveyed by Abraham Swaggerty, on the 20th of June. 1790. The land is described therein as lying in the county of Hawkins, on the north-west side of Emmery's River, in Powel's Valley, including the Cumberland trace, and the west branches of the first creek that falls into Tennessee River below the mouth of Clinch River, beginning at a post oak on Ree's line a former survey of 640 acres, thence south 45 east, 180 poles to a post oak, south 45 west 360 poles to a stake; north 45 west 160 poles to a stake; thence a direct course to the beginning. In order to establish the boundaries of this tract, the plaintiff also gave in evidence a grant for 640 acres to William Reed, surveyed by Abraham Swaggerty, on the second of June, 1787, described as lying and being in the county of Hawkins, on the north-west side of Emmery's River on the west branches of the first creek that empties into Tennessee River below the mouth of Clinch River, including the Cumberland trace, beginning near the head of the Oven Spring, at a post oak and red oak, at the foot of Cumberland Mountain, thence south 45 west 400 poles to a post oak; south 45 east 280 poles to a stake; thence north 45 east 400 poles to a stake; thence a direct course to the beginning. The beginning of the 640 acre tract was admitted, and that the tract was situated as described in the grant, but that old marks on none of the lines or corners of that tract could be found, except at the beginning. Colonel M'Clellan proved, that he never heard of any survey or grant in the name of "Ree" in that neighborhood, and that he is well acquainted with the 640 claim of William Reed, mentioned above. To begin at William Reed's second corner, as called for in his grant, as a post oak, and run the courses and *Page 530 
distances called for in the plaintiff's 400 acre grant, the defendant is included. It was further proved, that no other 640 acre tract, except Reed's was known of. which the 400 acre grant could adjoin, and at the same time include the objects called for in it, and that it could not begin on any other line of the 640 acre tract than the second, and run the courses and distances so as to include the objects called for in the grant without running into the 640 acre tract. The 400 acre tract might begin at any point on the second line of the 640, 200 poles from the second corner thereof, and include the objects as well as to begin at the second corner. No marked lines or corners of the 400 acre tract could be found.
The defendant showed no title, and relied on possession only; but, in order to impair the force of the plaintiff's testimony, proved, that to begin on the second line of William Reid, at various points, within two hundred poles from the beginning of that line, and run the courses of the 400 acre grant, he would not be within it. and the objects called for in the grant would be included. Stephen Bishop, who was marked by the surveyor as a chain carrier in his plat of survey of the 400 acres, deposed, that he never did carry the chain in the surveying of that tract. Different witnesses proved that the plaintiff made several experimental surveys in order to ascertain his boundaries; in consequence of some one of these surveys, the defendant left the place he then lived at, and removed a small distance to the place where he now lives, in order to be without the plaintiff's claim, who told him he must remove. That the plaintiff told the defendant whilst they were disputing about the plaintiff's boundaries, that he did not know where they were, and that he would be under the necessity of getting Col. M'Clellan, the public surveyor, to run out the tract, and ascertain the lines, which was accordingly afterwards done.
The jury found a verdict for the defendant, upon which the plaintiff moved for a new trial, which was refused by the Court. To this opinion of the Court refusing a new trial, the counsel for the plaintiff excepted; on the part of the defendant two grounds have been taken in this court. *Page 531 
First. That this court have no power to examine the decision of a circuit judge in allowing or refusing a new trial.
Second. If this point should turn out otherwise, the finding of the jury is correct from the evidence before them.
The first question was put at rest in the case of Kelton v. Moore, and Kelton v. Bevins at Nashville. These were two cases situated like the present, the same exception taken and argued; the court was then full, and much time taken to examine the question. It was the first time the point was brought before the Court of Appeals. Upon examining the decisions in the States of Virginia and Kentucky, whose judicial establishments are similar to our own, it appears the question has been settled there, and that the courts of those States examine the decisions of the inferior courts as to granting or refusing new trials; so the law has been settled here in the cases alluded to at Nashville. See1 Wash. 79, 325; 2 Wash. 36; 1 Call, 369; 3 Call, 568; Hardin, 167, 515, 539, 586. But the Supreme Court will not disturb the decision of an inferior court as to new trials, unless it clearly appears that the court erred. If doubtful the case will be suffered to rest.
This court having power to examine and control the judgments of the circuit courts in relation to new trials, the second question offers itself.
The first and leading principle to be attended to in the construction of grants is that they shall not be destroyed, or be ineffectual for uncertainty, if by any reasonable means the intention of the contracting parties can be collected; and these means are not confined to what appears on the face of the grant itself, id certumest quod certum reddi potest. Any fact or matter in pais to which the grant either directly or indirectly refers may be shown in affirmation of the grant, rather than it should be abortive. 3 Wil. ed. Bac. Ab. tit. Grants, F. 386, 394, I. 391, H. 2. Co. Lit. 183 b 2; Wil. 78; 2 Saund. 96, n.
It has been insisted that as the plaintiff's grant calls for Rees's line, and as there is no such claim there the grant must fall. This is not believed to be *Page 532 
the law, for as great, and in some instances greater, mistakes have been overlooked by the courts, 3 Bac. Ab. 389. H. 1. And in 3 Binney, 26, 28, Ramsey's line and a chain of hills were called for, when Ramsey had no line nor was there any chain of hills, but as there were other circumstances from which the intention of the grantor could be collected, the grant was adjudged good. So in this case, taking into view that this grant as well as William Reed's call to lie on the west branches of a certain creek and to include the Cumberland trace, that the same man surveyed both tracts and that Ree had no claim or survey in that neighborhood, a violent presumption arises that Reed's tract was intended, this presumption is strengthened by the language used in the plats of both surveys. Taking the whole of these circumstances together, it is believed that nothing less than proving that Ree had a former survey in the neighborhood which would answer the description in the grant could overthrow this presumption. In the course of doing business, it might easily happen that a man of common capacity for writing might omit to put the letter d to the word Ree. Add. 145. Had this letter been added, it would have read Reed's instead ofRee's. Still it is urged that a doubt remains what line of Reed it must adjoin; this doubt is removed when we consider that Swaggerty surveyed both tracts, and that to begin the 400 acre tract on any other than Reed's second line, and to include the west branches, and the Cumberland trace, it would run into the 640 acre tract, this cannot be presumed. The law presumes that the return of a surveyor is true. 3 Binney, 35-38; Littell, 64. Now as the surveyor has returned in his plat that the tract of 400 acres is to include these west branches and also the Cumberland trace, and as a tract calling to adjoin another cannot, without proof, be construed to run into the claim which it is to adjoin; we are constrained to place the beginning of this tract somewhere on the second line of the 640 acre tract.
But it is again insisted that there is nothing either in the grant, or the proof by which the beginning on the second line can be legally ascertained. The *Page 533 
Court are not unmindful that the defendant sets up no title to the land, and that this dispute is in fact between the State and its grantee. If the principle of law was not well established that courts will even be astute in discovering means to give effect to grants, no court would incline in favor of objections made by a mere possessor. The grantee has paid a full consideration for his land, and thereupon obtained a conveyance, the possessor has no title, nor has he paid a cent. To return however to the rules of construction respecting grants. In 3 Bac. Ab. 395, I. 3 it is said that "words in grants shall be construed according to a reasonable an easy sense, and not strained to things unlikely or unusual."
It was the duty of the surveyor to mark his corner and lines: the law presumes he did so. Littel, 64; 3 Binney, 35-38. Hence it appears that there was a post oak marked as a corner at the end of the first line, and beginning of the second of the 640 acre tract of Reed, the surveyor having returned such a tree as a corner. It thus appears that on the second Hue of Reed there was a post oak known to the surveyor of the 400 acre tract. It was at the beginning of that line, and marked as a corner for Reed's. No other post oak has been shown to exist on this second line, and much less a marked one. None having been shown to exist there, we cannot presume one did exist, as there is nothing which could lead to such a presumption. The return of the surveyor shows that there was a post oak at the end of the first line of Reed, being his second corner, it is therefore a fair inference that this post oak was intended for the beginning corner of the 400 acre tract, no other marked post oak having been shown to exist on this second line. In order to establish the boundaries of a tract of land it is not indispensably necessary that some corner, or marked line, should be proved to exist. If it is proved to have existed, or any monument, corner, or marks from which the boundaries called for in a grant or deed can be satisfactorily ascertained, according to "an easy and natural interpretation," it is sufficient, and particularly so against a man who has no title. *Page 534 
He possesses the land, either by the courtesy of the State or an individual. So far as rights incident to possession alone come into view, the defendant would be competent to any objections; but where it is a matter of clear title and disputed boundary on the part of the plaintiff, and bare possession on the part of the defendant, nice objections cannot prevail. A title to land cannot exist without boundary; the plaintiff must show a marked boundary, or some proof from which boundary can be ascertained before he can say to the defendant, "I have a better right to possess this particular piece of land than you have," but it is very questionable whether a defendant thus situated would be permitted to draw in to examination any marked corner or line, or that which the law would presume did once exist. The plaintiff has paid for four hundred acres of land, it is immaterial to the State where he takes it, the defendant has no title either equitable or legal, and his protection in the possession is merely a political institution for the peace and harmony of society. See 5 Mass. 53. It is not necessary to examine in this case the doctrine of notoriety as to boundary, or whether it is necessary that it should possess equal, greater, or less than entries. Notoriety arising from entries is an equitable consideration, we are now in a court of law in the examination of merely legal questions. Precision to every purpose is not conceived to be necessary even in entries in this country, and perhaps it will be found that entries and grants for lands in such parts of the country where the law required entries in all cases are similarly situated as to notoriety, except that in the first case the application of the principle is to general description, and in the last to boundary, or to facts from which locality in the one case and boundary in the other can be ascertained. But in the ease before the Court neither of the grants are founded on entries for the lands granted: surveys without entries were contemplated and allowed by law in that part of the country, and therefore a question respecting the notoriety required in entries being applicable to grants cannot arise, the question must he considered independently of any idea respecting entries, and consequently the *Page 535 
doctrine respecting grants of a State, or of the king in relation to their being void or not, operates with full force.[1] There is no doubt that a grant may be lost for uncertainty, there being no means by which its boundaries can be defined, Littel, 30, but it is believed this is not one of those cases. The different surveys made by White were merely experimental, and not obligatory on any person. Littel, 95; Sneed, 286. They neither could change boundaries if actually marked, nor presumptions of law. From the facts appearing on this record the 400 acre tract should begin at the end of Reed's first line where a post oak formerly stood, which is ascertainable by running the course and distance of Reed's first line which will show the place; running the 400 acre tract from thence the courses and distances called for.
The judgment must he reversed and the cause remanded to the CircuitCourt for a new trial.
NOTE. — How far the courts of law will go in the correction of mistakes in written instruments, so as to effectuate the intention of the parties, is a matter of grave difficulty. It seems to be conceded that a miscollocation of words will always be rectified, where all the words are present. State v. Adams, 3 Head, 262. So, a word absolutely necessary to the sense of the instrument will be supplied. Nichol v. White, 4 Hay. 257; and, per contra, a word contrary to the evident meaning of the instrument will be rejected. Wood v. Goodrich, 9 Y. 267. The sense will also control the grammar and punctuation. State v. Cherry, Meigs, 232. The following are instances in our books where mistakes or omissions have been either rectified or held not fatal: —
In a grant, Ree's for Reed's. White v. Hembree, 1 Tenn. 529-532.
In number of grant, Fancher v. Montegre, 1 Head, 40.
In the beginning corner of a grant, "South-east" instead of "south-west" cornet of Fentress county. Funa v. Manning, 11 Hum. 311.
In the beginning corner of land, either in the grant or declaration, "Ten" instead of "two" miles from a particular object. Leach v. Cooper, Cooke, 249.
In grants or entries, inconsistent calls, or calls not in accord with the facts may be rejected, Winchester v. Gleaves, 3 Hay. 213; Cooke, 129; 2 Tenn. 299.
In the calls of a grant. "So that the grant did not cover one foot of land surveyed." Person v. Roundtree, cited in Miller v. Holt, 1 Tenn. 115.
In entry, "West" for "Little Harpeth." Dudley v. Graham, Cooke, 353.
In an indictment, "Harris" for "Harrison." State v. France,1 Tenn. 434.
In the omission of the word "not" in an injunction bond, Nichol v. White, 4 Hay, 257.
In the omission of the word "west" in a bond to the treasurer of West Tennessee. Kincannon v. Carroll, 9 Y. 11.
In the omission of the word "dollars" in body of negotiable paper. Williamson v. Smith, 1 Cold. 1.
In the omission of the word "days" in a notice by a surety to the creditor to bring suit against the principal. Waterford v. Hensley, M. Y. 275.
In entering erroneously, or omitting to enter prayer of appeal from justice's judgment. Rogers v. Cochran, 3 Y. 311; Lawler v. Howard, Meigs, 15. — ED.
[1] In the case of Polk's Lessee r. Robertson and Cockrel, ante,
p. 456, a question of boundary alone occurred, as it was contemplated by law that at the time Polk procured his survey and grant, lands in that part of the country might be legally surveyed and granted without entry, on this ground the decisions are reconcilable.
 *Page 1